# EXHIBIT  1

BOSTON, SS                                                              Superior Court

Amin Karimpour,                                    )
Plaintiffs                                         )
                                                   )
v.                                                 )
                                                   )
Stanley Black and Decker,                          )
Rhonda Gass and Joseph Pereira                     )
Defendants                                         )
                                                   )

## COMPLAINT

1. This is a Complaint under Massachusetts General Law Chapter 151B for discrimination on the basis of age in promotions and employment of the Amin Karimpour during his employment at Stanley Black and Decker with final Lay off date on October 7th 2019.

## JURISDICTION

2. The Plaintiff, Amin Karimpour, filed a complaint for discrimination with the Massachusetts Commission Against Discrimination on December 24, 2019(Docket # 19BEM03544) more than ninety days prior to the filing of this action.
3. This Court has jurisdiction pursuant to Massachusetts General Law Chapter 151B.

## PARTIES

The plaintiff, Amin Karimpour, mailing address at 66 Marlboro street, Belmont, MA 02478.

4. The defendants: Stanley Black and Decker("Stanley") and Joseph Pereira and Rhonda Gass Chief Information Officers (CIOs) of the company, are a Major manufacturer of tools and CIOs with Corporate head quarter located at The 1000 Stanley Drive, New Britain, CT 06053.
5. Stanley has approximately 61000 employees.

## STATEMENT OF FACTS

6. Plaintiff was hired by Stanley Black and Decker on July 24, 2017. Plaintiff began working at the company as a Business Systems Lead for Engineering and IT resource for all IT requirements of Health Care and Access Technologies Security Divisions in US. Plaintiffs Work had always been Satisfactory and at times exemplary.
7. Within the first year, achieved addressing many existing open issues. per annual evaluation, Brian Furtak director for the Business Applications of the Security and Healthcare divisions (Plaintiff Manager) was very positive on his performance per his review.
8. Brian informed the Plaintiff that while he wanted to give him exceeding expectation in some areas, Joseph Pereira (CIO of the division) rejected such assessment as plaintiff was not with the company for long-time.

BOSTON, SS                                                                    Superior Court

9. During Summer of 2018, due to new acquisitions the business decided to reorganize the acquired companies and reorganize the Engineering for all divisions in Security under the Team that plaintiff has been providing services for over a year.  Plaintiff provided a recommendation Mr. Furtak, that due to business changes, IT organization should support the change with introduction of new BRM (Business Relationship Manager) role for Engineering.

Plaintiff had many years of experience with M&A (Merger and Acquisition) companies in the past. He identified the requirement for the new role to support the business changes more effectively by establishing a new managerial role to support this new business structure.  Plaintiff made his recommendations to Brian Furtak in August of 2018.  Brain was going to raise it with the CIO of the division Joseph Pereira.

At the time, Plaintiff had over 20 years of experience in complex products and IT organizations, was leading Healthcare and SAT (Stanley Access Technologies Security) divisions IT and adding 3xLogic / SPS was minor change to what he was doing for the Security businesses.

The Business Transition was the Engineering for Healthcare, Stanley Access Technology and SPS was going to be structured under VP of Healthcare Engineering (Baruch Yoeli) setting engineering for all security/ Health products under VP of Engineering.  Plaintiff had built great relationship with Mr. Yoeli and was working closely with Both Stanley HealthCare / Stanley Access Control (which had its own smart Door technologies) ... Plaintiff was ideally positioned to be the BRM to all businesses and manage the engineering needs for SPS.

10. The Plaintiff email (attached)to Mr. Furtak in October prior to meeting with Joseph Pereira (CIO of Security/Healthcare division).  Joe Pereira reported to Rhonda Gass (CIO of Stanley Black and Decker and twin sister of plaintiff former direct boss at Bose Corp. Wanda Catoe).  Note: The plaintiff had similar challenge with Wanda Catoe at Bose, resulting plaintiff in layoff and Wanda's departure from Bose after plaintiff formal complaint.

11. In September of 2018, Brian Furtak informed plaintiff that Joe has decided to make changes to better align with Business changes as Plaintiff had suggested. He has creating the new Engineering Application Manager BRM role.   Mr. Furtak informed the plaintiff that Tim Schuch who was 4 years out of college and has no Engineering or department management background was given the new position and Plaintiff will be reporting to him.

12. On October, 2018, before meeting with Joe on announcement of transition, Plaintiff wrote to Brian Furtak that based on review of Mr. Schuch and his professional background on linked-in; he does not seem to bring any qualification to the position, except "youthful energy".

13. The BRM (Business Relationship Manager) was a superior role to position plaintiff had as The Engineering Business Lead.  The new position was selectively given by Joe Pereira to Mr. Schuch Business Analyst (4 years out of college) with significant less experience and skills than plaintiff.

14. The defendant has provided the email submitted to Mr. Furtak in October prior to meeting with Joe.  The new position was selectively given to Mr. Schuch Business Analyst with the significant less experience and skills than plaintiff.   Plaintiff explained the details of challenges and why Plaintiff was better candidate for the role than Mr. Schuch.

15. On October 8, 2018, Joe Pereira the CIO of the division setup a meeting to present the reorganization and informed the plaintiff that he will be now reporting to Tim Schuch.

16. On October 8, 2018 after on-line meeting with the teams was over with Joe Pereira, Brian Furtak and team in Israel; Mr. Furtak responded orally to plaintiff email. He informed plaintiff he had the discussion with Joe Pereira who had confirmed plaintiff concerns with age bias against him! Joe had stated he is seeking a person who has "youthful enthusiasm" not "youthful energy"!

17. After few months reporting to Mr. Schuch, it was clear that Mr. Schuch has no background for the role and plaintiff need to keep educating him on various aspect of the Engineering …

18. In January of 2019, plaintiff start seeking other opportunities to grow as he was leading Industry 4.0 initiatives for Security division, he applied for a management role in growing Industry 4.0 team.    He had four successful interviews with various levels of the team management with positive feedback from HR after each interview and was sure to have secured the new position.

19. On February 21, 2019, Plaintiff filed a formal internal complaint with Convercent, a third-party administrator of internal complaints for Stanley. Plaintiff complaint Joe Pereira act of age discrimination against him.  Plaintiff also raised the issue with the company young leadership program that Mr. Schuch was graduate of.   New positions were not even get posted and did not follow standard company process for seeking best candidate for a new position.  It was selectively given by Joe Pereira to Mr. Schuch as part of his leadership transition in the program.

20. As evident on the Letter to Healthcare Division HR, Grotevant Bill, the topic of what has been transpired was well understood by HR even before filing the complaint.  Plaintiff did not hear back on the position that was almost his in Industry 4.0 team after filing of the complaint.   He faced major intimidation from HR, New Manager … all sides to void the complained filed.

21. As it is evident from Organization charts, The Plaintiff, Mr. Abekasis (IT Manager of R&D MENA) and Itai where reporting to Mr. Schuch until March 8, 2019.  After that date, they were reporting to Mr. Mascola.   Mr. Furtak unplanned retirements also included promotion of Mr. Kevin Anderson to role of BRM for SAT division.  Hence, The Management team reporting to Mr. Pereira changed by two new BRM and for Mr. Schuch, no person that reporting to him after this transition … Joe called it reorganization to better serve businesses.    This was based on the fact that Engineering decided to go back to same structure as before (Stanley Automation Technology, Stanley Healthcare and SPS …).

22. Brian Furtak informed the Plaintiff of his taking a retirement in few weeks after plaintiff complaint was filed.

23. Mr. Mascola was leading M&A for the company and had former Manager/ Director of IT before for healthcare division few years back.  He was selected by Ms. Gass to become director of Health care division (Again opening new position was fulfilled selectively).  Mr. Pereira was CIO of healthcare before and had work with Steve Mascola.   Mr. Mascola knew all people and all the problems … and was surprised to see the businesses (Healthcare had several M&A businesses) had agreed and converged into one integration strategy in few years after his departure. Something that was not achieved during Mr. Pereira and Mascola leadership for healthcare division for over five years.   Mr. Mascola recommendation in Linked-in attached reflect not only that Plaintiff was great business relationship manager but also working in various projects cross Security organization.

24. Plaintiff was supporting Engineering applications, Tech-support, …   network infrastructure, Healthcare Corporate Experience Center (complex product demo /experience testing … center), Training room … for Stanley Healthcare and Stanley Access Control and could have easily be the BRM for Healthcare division.  Plaintiff was informed that Rhonda Gass had decided to get Mr.

Mascola who was leading M&A for the company to be back to Healthcare after Mr. Furtak sudden departure (through intimidation plaintiff saw from Joe).

25. Per attached Mr. Pereira Org charts, Q4 2018, Q1 2019 and Q2 2019 we see what is transpiring. After October 10, 2018, Plaintiff is reporting to Mr. Schuch (business analyst) with Mr. Abekasis Q4 2018 chart... on Q1 of 2019, After Plaintiff complain to HR, Mr. Schuch has no direct report and given opportunity to hire "an Engineering analyst"? for SPS. Per Company own assessment SPS was small acquisition that would well fall into what Plaintiff was already doing for SHS, SAT, ...

26. From July of 2018, Department "Certificate of Appreciation" on Plaintiff for going above and behind his duty, his effort in managing and addressing business need that was not getting resolved any other ways. Plaintiff was the go-to person for many engineering and non-engineering related IT business issues. He had built strong relationship with various resources in the Corporate IT ...

27. BRM (Business Relationship Manager) is a manager role and is above Plaintiff Business Lead role.

28. The role by itself does not define the salary rather it is a combination of experience and other responsibilities a person has for the job (Plaintiff was not just Engineering Application person but also was go-to IT person for healthcare and even Corporate IT office setup next door from technical perspective).

29. Please review the facts on Plaintiff reviews by Mr. Furtak for 2017, 2018, types of projects fulfilled for the business SAT, Healthcare, Industry 4.0, Product Security, Future Business in Seaport, Boston.

30. The fact that Plaintiff, Mr. Abekasis (Manager of IT for Healthcare in Israel),Mr. Itai who was reporting to Mr. Abekasis, were now reporting to Mr. Schuch vs. Mr. Furtak reflect BRM role was:
a. Management,
b. superior to the plaintiff position,
c. Salary stated for Mr. Schuch was based on his (lack of) experience. In an essence Mr. Schuch for SPS, Mr. Mascola BRM for Healthcare, Mr. Anderson BRM for Stanley Access Technologies and Mr. Furtak (for SAT / Healthcare) where/are on same level in organization chart to Mr. Pereira. It was the BRM role who end up deciding who will get layoff?

31. Plaintiff Communication (March 10, 2019) with Ms. Gesheff (HR person investigation the age bias committed by Executives of the company) is clear... It contradicts her HR internal email communication on March 4th that was presented, and Plaintiff was not aware of. Plaintiff explained in detail his claim and she provided no response?! While Plaintiff stated "no further escalation"; at no point he asked for closure of the matter as an age discrimination act occur by C-Class leaders of the company.

32. In March 10th 2019 letter, the Plaintiff did not acknowledge a miss understanding on what transpired but given Mr. Furtak left after the complaint (retired!) and Mr. Mascola/Pereira intimidation on the topic. HR dropped the ball: Mr. Russell request to Ms. Gesheff resonate her position with Plaintiff, "need to close this case".

33. As evident from Letter to Mr. Furtak, Complaint and follow up emails to Ms. Gesheff on March 10, 2019 Plaintiff clearly stated that:
A. Joe Pereira has made an Age discrimination promotion and statement to Brian Furtak as such
B. Did not followed company procedure to advertise the position
C. Plaintiff did not alter his claim of Age discrimination as Ms. Gesheff claim in the March 4th 2019 communication to Mr. Russell.

34. At no point Plaintiff was informed of closure of the complaint or reached with any feedback on the case after his lengthy letter to Ms. Gesheff on March 10, 2019.

35. Per attached Mr. Pereira Org charts, Q4 2018, Q1 2019 and Q2 2019 we see what is transpired that lead to final termination of the Plaintiff. After October 10, 2018, Plaintiff is reporting to Mr. Schuch (business analyst) with Mr. Abekasis Q4 2018 chart... on Q1 of 2019, After Plaintiff complained to HR, Mr. Schuch has no direct report and given opportunity to hire "an Engineering analyst"? for SPS. Per Company own statement SPS was small acquisition that would well fall into what Plaintiff was already doing for SHS, SAT, ...

36. The Email was provided in the February 14th 2019 as the formal complaint, Mr. Furtak was employee at the time of the original complaint and left the company (retired?) on March 8th 2019. Per Ms. Gesheff (Stanley HR lead) statement, she had interviewed all relevant parties (her email). May be part of the reason for abrupt retirement of Mr. Furtak weeks shy of his 21 years with the company.

37. Mr. Pereira statement and action translate to age discriminations the law intended to prevent. For the Stanley's human resources to be aware of it and take no action other than quietly close the case; is reflective of true nature of systematic Age Discrimination.

38. A week later after a call from Ms. Gesheff (Stanley HR person responsible for plaintiff complaint), Brian Furtak informed the Plaintiff that he will be retiring in two weeks; few weeks before his 21st anniversary with the company. This was very sudden.

39. The Email was provided in the February 14th 2019 as the formal complaint, Mr. Furtak was employee at the time of the original complaint and left the company (retired) on March 8th 2019. Per Ms. Gesheff statement, she had interviewed all relevant parties? Mr. Furtak stated the Mr. Pereira had used the word "youthful enthusiasm" to describe why to position was given to Mr. Schuch ... [Correction] It was not Mr. Furtak position as it is reflected in Plaintiff annual reviews on 2017 and 2018.

40. Plaintiff complaint on February 14th 2019 few weeks before Mr. Furtak abrupt departure could have been substantiated MS. Gesheff; leading to this "early retirement" by Mr. Furtak, shy of 21 years with the company.

41. On March 8th, 2019, I received my annual performance review, which Brian Furtak rated me exceeding in some of the expectations.   This was last day Brian Furtak was with the company.

42. On March 10th, 2019, our team was reorganized, and plaintiff was informed that he will be reporting now to Steve Mascola who was selected by Rhando Gass (CIO).   In an essence a new BRM position was created and was "filled selectively" by Rhando and Joe. Kevin Anderson was promoted to Brian Furtak position for SAT division.

43. Plaintiff was working with Steve who was now BRM for Healthcare and for Kevin Anderson who was BRM Access Technology business.   As before, Plaintiff was responsible for Engineering Applications and various projects for most of Stanley Security Divisions.   The company divested from Surgent and Surgent and Greenleaf in summer, while leading a logistic project for Access Technology division.

44. On October 7. 2019 Plaintiff lost his job as part of reduction in force action by Stanley. This was a targeted retaliation act for formal complaint on age discrimination Plaintiff had filed and intimidation that followed to give up and claim the issue as miss understanding.

45. From the point of compliant to final day of layoff, the plaintiff was under constant intimidation by superiors in the division and human resources was to no avail as it had forces closure of the matter without plaintiff consent.

46. Because the company provides leadership and growth opportunities to younger employees and not more skilled experienced employees. Because a younger and less capable employee was selectively appointed to a position that Plaintiff helped define.  Because Joe Pereira stated he wants a person for the leadership role who has "youthful enthusiasm", and because plaintiff was terminated in a RIF, after his formal internal complaint on age discrimination retaliation act. Plaintiff seeks justice from this honorable court.

47. The company response on this area is not focused.  The question should be answered in scope of the role and department.   There are 4 BRM who have list of people reporting to them under Joe Pereira, how many were Layoff?  E.G. Mr. Schuch that had zero person reporting to him after Mr. Mascola took the Healthcare position on March 10th 2019, had two persons reporting to him by October 7th 2019.   The statement also does not include any details on Mr. Abekasis and Mr. Itai in Israel and part of Mr. Mascola team ?  (Understand that layoff is based on the country), but who should be let go from a team depends on where the work needed to be fulfilled.  I.E. Mr. Furtak in confident stated that Mr. Abekasis is lazy (concurred by my Mr. Mascola) and Baruch has been looking to get a resource in States to cover all regions ( Ness Ziona, Ottawa, Lincoln Nebraska, Waltham, and Now Woburn and Portsmouth) and have better alignment with Corporate IT which plaintiff was next to and build relationship with.

48. The layoff gave the first opportunity for retaliation by Mr. Pereira and Rhonda Gass as Plaintiff February 14th 2019 complaint included clear picture of what was wrong with their leadership to the Security, Healthcare and IT services over several years …

49. Plaintiff was working on an Industry 4.0 project for SAT / SHS divisions as well as supporting the move which was part of his role when hired to support the Healthcare offices in US and Canada and business teams requirements … Plaintiff changed telecommunication services from go-to meeting to Zoom, provided VDI services, … while working on various projects for Engineering in both SAT and Healthcare …   Plaintiff Resume and work experience in various areas of IT speaks for itself.  Many Senior Business Analyst and Project management roles in various industries … As matter of facts, about a year before layoff, Mr. Pereira had team compile list of skills, they have …   Mr. Furtak suggested that number of ERPs, Applications, … Plaintiff has selected for skills on, would put him in a tight bind to fulfill many projects with same time-line …  Plaintiff Linked In profile which was connected on HR profile in the company reflected not only the experience in diverse companies in various discipline of IT organization but also recommendation from leadership teams of such organization …

50. As Mr. Mascola explained "the BRM role has limited technical expertise" and hence the major gap between what Business Need and What Corporate IT delivers is resulted from this gap) … The reason Plaintiff was selected to represent Security Business for Industry 4.0 initiatives by Mr. Furtak in Stanley Security was his wide spectrum of technical and business expertise which were demonstrated in his first 8 months of his employment.

51. Due to departure of SAT President, President of Healthcare and her team became president for SAT and SHS. Given Plaintiff was the Business IT person who worked with both organization for over 2 years, his position was critical in this transition phase.

During a major change of offices as was the case for head quarter of healthcare… to eliminate the person who has been managing and supporting them for over 2 years is not rational?  On SAT division Industry 4.0 project which was actually a Supply Chain (Shipping / Logistic for Manufacturing to Order business), Plaintiff and Mr. Anderson had reached a conclusion that the major challenge is in Engineering product structure …  This again required Plaintiff expertise who had worked with the Engineering teams and successfully rolled out several projects with them.

52. Mr. Mascola was aware of this project as well.  Plaintiff 2018 review shows the nature and types of projects Plaintiff had worked and was working on...  Finally, the reason the engineering project for Healthcare fall through was Mr. Mascola change on technology after business had agreed on what to do for 1/3 price tag to alternative Mr. Mascola pulled out of the grave... literally tripling the budget of the project (with much riskier outcomes).

53. This is exactly type of Whistleblowing act plaintiff shared with Mr. Jim Tallaksen, VP Labor and Employee Relations.  The BRM role is to serve business IT needs and find what is best suited not impose overpriced Corporate IT solutions that can never be funded, while sustaining IT resources.  Healthcare business could go out of business with 5 different ERPs, no common processes and no integration between Engineering and Manufacturing.  Plaintiff heard from business executive the same as cost of Engineering was not justifying the value to the bottom line.

54. As Mr. Mascola who had been leading several divestments of the past acquisitions stated: "The company acquire profitable entities and divest it due to its mismanagement of the acquisition and lack of its integration… at a loss".    This was quite evident in healthcare business, Future business and other businesses.

55. Whistleblowing act: There is a culture of doing everything to do nothing in corporate IT.  By simply inflating the project budget size to avoid meeting business capacity for fund it, the business stays in perpetual state of inefficiency.  The company cannot reach the promise to the shareholder of 20 Billions by 2022 if Digital Transformation is bottlenecked by Corporate IT organization.

56. The complaints filed on February and October 2019 are whistleblowing act not only to Age discrimination but also against IT management that are covering their incompetence … by big costs to businesses and budget on projects that business cannot effort.

57. Prior to contacting MCAD, I was referred to Mr. Jim Tallaksen, to address my complaints internally.  The issue is much bigger problem for the company.  I have shared some examples that speaks to the root causes of these mismanagement.  The reason I had seek BRM role was to better workout the gaps between Corporate IT and Business need.

58. This is not the only cases against Stanley Black and Decker in the given time of the abuse:
    - E.G Stanley Black & Decker will pay $140K to fired, cancer-stricken woman in need of medical leave (EEOC suit ends in cash payment and policy updates, though company disputes allegations of wrongdoing [March 6th 2019]). https://www.marketwatch.com/story/stanley-black-decker-will-pay-140k-to-fired-cancer-stricken-woman-in-need-of-medical-leave-2019-03-06
    - Stanley Black & Decker Should Reveal Severance Offers, EEOC Says (one of the reasons that plaintiff did not sign settlement agreement). https://news.bloomberglaw.com/daily-labor-report/stanley-black-decker-should-reveal-severance-offers-eeoc-says

- In Meditation session setup by MCAD, Stanley Black and Decker console Mr. Jim Tallaksen lied that plaintiff was paid the severance amount despite not signing the paperwork (That is not true and the company knows is it well). The reason claim to have paid the severance; regardless of signing the settlement agreement; might have be related to above EEOC Complaint against the company.

59. According to Equal Employment Opportunity Commission (EEOC), about 35 percent of the U.S. population is now age 50 or older. Yet, in 2018, the nation's workforce watchdog — issued a damning special report on age discrimination against older Americans. It concluded that even though 50 years had passed since Congress outlawed the practice, "age discrimination remains a significant and costly problem for workers, their families and our economy."
Victoria Lipnic, the EEOC's acting chair at the time, went so far as to compare it to harassment(abuse): "Everyone knows it happens every day to workers in all kinds of jobs, but few speak up. It's an open secret."
That same year, an AARP survey found that:
Nearly 1 in 4 workers age 45 and older have been subjected to negative comments about their age from supervisors or coworkers.
About 3 in 5 older workers have seen or experienced age discrimination in the workplace.
76 percent of these older workers see age discrimination as a hurdle to finding a new job; another report found that more than half of these older workers are prematurely pushed out of longtime jobs and 90 percent of them never earn as much again.

60. Age discrimination has become institutionalized in Corporate America, like race discrimination that despite 100s of laws prohibiting it, occurring every day; even by "Law Enforcing Officers". Reorganization that follows position elimination has become tool of choice for elder employees' termination in Corporate America. Age discriminated employees are abused victim of corporate policies/ misconduct. Court proceeding for a jobless elder employee vs. multi-billion Dollars Corporation that has its own legal department plus the luxury to have hired top legal firm; is a battle of David vs. Gallia.

61. Plaintiff seeking court action as the last option on the table. Given the complexity of unemployed individual to confront Stanley and absorb the cost of proving Age Discrimination, we need to make these types of cases cost prohibitive to the company's executives and prevent its institutionalization as it is evident in this case. The companies HR action speaks to coverup, abuse, intimidation and ultimately retaliatory action by layoff of the Plaintiff.

**Count I: DISCRIMINATION ON THE BASIS OF AGE IN VIOLATION OF M.G.L. C. 151B && 1.4 et seq.**

1. Plaintiff Amin Karimpour repeats and realleges each and every fact set forth in paragraphs 1-61 of this Complaint and incorporates them by reference herein.
2. Corporate Settlement agreement must not contain statement to give up anti-discrimination rights as that has violated the intent of the law. Layoff is a stressful condition for an employee and severance payment is generally calculated based on number of years an employee had worked

BOSTON, SS                                                                    Superior Court

for the company.  An employee should not be put under further duress to sign a contract giving up their age discrimination rights under layoff circumstances.

3. Defendant Stanley Black and Decker Corporation discriminated against plaintiff Amin Karimpour in Promotion and career growth of employee on the basis of age in violation of Massachusetts General Law Chapter 151B.

4. Defendant Stanley Black and Decker Layoff and abused the plaintiff due to retaliatory and whistleblowing action on his complaint and raising red flag on incompetency/ bad decisions made by executives of the company.

## Count II: DISCRIMINATION ON THE BASIS OF AGE IN VIOLATION OF M.G.L. C. 151B . §§ 1.4 et seq.

1. Plaintiff Amin Karimpour repeats and realleges each and every fact set forth in paragraphs 1-61 of this Complaint and incorporates them by reference herein.

2. Corporate Settlement agreement must not contain statement to give up anti-discrimination rights as that has violated the intent of the law.  Layoff is a stressful condition for an employee and severance payment is generally calculated based on number of years an employee had worked for the company.  An employee should not be put under further duress to sign a contract giving up their age discrimination rights under layoff circumstances.

3. Defendant Stanley Black and Decker discriminated against plaintiff Amin Karimpour in Promotion and career growth of employee on the basis of age in violation of Massachusetts General Law Chapter 151B.

4. Defendant Stanley Black and Decker Layoff and abused the plaintiff due to his Whistleblowing and raising red flag on incompetency/ bad decisions made by company's management at expense of company's share-holders.

## Count III: HOSTILE ENVIRONMENT IN VIOLATION OF M.G.L. C. 151B. §§1.4 et seq.

1. Plaintiff Amin Karimpour repeats and realleges each and every fact set forth in paragraphs 1- 61 of this Complaint and incorporates them by reference herein.

2. Corporate Settlement agreement must not contain statement to give up anti-discrimination rights as that has violated the intent of the law.  Layoff is a stressful condition for an employee and severance payment is generally calculated based on number of years an employee had worked for the company.  An employee should not be put under further duress to sign a contract giving up their age discrimination rights under layoff circumstances.

3. Defendant Stanley Black and Decker discriminated against plaintiff Amin Karimpour in Promotion and career growth of employee on the basis of age in violation of Massachusetts General Law Chapter 151B.

4. Defendant Stanley Black and Decker Layoff and abused the plaintiff due to his Whistleblowing and raising red flag on incompetency/ bad decisions made by company's management at expense of company's true share-holders.

*The Plaintiff, Amin Karimpour, seeks a jury trial on all triable issues.*

BOSTON, SS                                                                                    Superior Court

WHEREFORE, the Plaintiff, Amin Karimpour, respectfully requests that this Court grant the following relief:

1. Compensatory damages in whatever amount he and the group is found to be entitled;

2. Exemplarily and punitive damages in whatever amount he and the group are found to be entitled;

3. A judgment to make Plaintiff whole by providing him appropriate lost earnings and benefits, emotional abuse and other affirmative relief.

4. An award of interest, costs and reasonable time and attorney fees, and,

5. Grant such other relief as this Court deems just and proper.


### RELIEF REQUESTED

Where, Plaintiff Amin Karimpour requests that the Court:

1. Award him actual damages, including but not limited to back pay, emotional distress damages, and all other remedies in law and equity available under Massachusetts General Law Chapter 151B, section 4.
2. Award him punitive damages
3. Award him reasonable legal fees, fees, costs of his time; and
4. Provide all other relief that is just and proper.
5. Provide Plaintiff with Whistleblowing restitutions.

Respectfully Submitted,
Amin Karimpour,
Pro Se

8/20/21

Dated

Amin Karimpour
66 Marlboro Street, Belmont, MA 02478

BOSTON, SS                                                           Superior Court

I, Amin Karimpour, declare under penalty of perjury that I have served a copy of the attached affirmation/affidavit upon:  Stanley Black and Decker and the CIOs Whose address is:  1000 Stanley Drive, New Britain, CT 06053 and email to legal representative of Stanley Black and Decker and it's officers at: Jim.Tallaksen@sbdinc.com.

Dated:  8/20/21

Amin Karimpour
Signature
66 Marlboro Street, Belmont, MA 02478

BOSTON, SS                                                      Superior Court

Boston_Works x

**Silvia, Danielle <Danielle.Silvia@sbdinc.com>** Tue, Oct 22, 2019, 8:02 AM

to me, Haley

Good Morning,

We have received notification that you had filed a complaint in our Convercent system and we
wanted to speak with you further regarding it. Would you be available at 2:00 PM today to
speak? If so, is 617-797-7543 the best number to reach you at?

Thank you,

Danielle

**Danielle Silvia, SHRM-CP**

*She  / Her  / Hers*

Human Resources Generalist, Corporate

Stanley Black and Decker Inc.

400 Executive Blvd South

Southington, CT 06489

Phone: (860) 406-9411

danielle.silvia@sbdinc.com
www.stanleyblackanddecker.com

BOSTON, SS                                                          Superior Court

This email, including any attached files, is intended only for the person to whom or the entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.



**Amin Karimpour <akarimpour@gmail.com>** Tue, Oct 22, 2019, 8:54 AM

to Danielle, Haley

Good Morning Silvia,

Thank you for reaching out to me. My phone number is correct.
I should be available around 2:00 PM.

Thank you,

Amin
--
Amin Karimpour
P.O.Box 462
Belmont, MA 02478

Tel. 617-489-5804
Cell 617-797-7543



**Amin Karimpour <akarimpour@gmail.com>** Wed, Oct 23, 2019, 2:57 PM

to Danielle, Haley

Good Afternoon Danielle and Haley,

Thank you for the call and sorry for the bad phone connection yesterday.

BOSTON, SS                                                                    Superior Court

I understand the challenge to submit substantial statements in limited space provided in Integrity site.   There are really two topics: 1. Age discrimination which is the continuum of original complaint in February 2019.  2.  Fundamental dysfunctional nature of Corporate IT that taxes business growth in SBD.

1. Age Discrimination:

As stated, the issue I had raised in February was not resolved with any resolution.   Due to Brian Furtak decision to quit right after the complaint and engagement we had with Joe P. seek no further escalation. My last communication to Meagan, Gesheff on March 10, 2019 after Brian Furtak departure was:

A. restating the facts that spoke to Age Discrimination by Joe P.

B. Provided much more details "While seeking no more escalation" (I.E. I have escalated the matter internally to a point that is now in HR domain).

Similar to the way that a position that I was working in the capacity and was qualified for was not posted and selectively given to a much less qualified younger person, my position/ elimination was selective by same group of decision maker.  In my opinion, my termination was both retaliatory to original complaint(based on last communication before Steven planned 1-1 for RIF) and age driven.

2.  Fundamental dysfunctional nature of Corporate IT that taxes business growth in SBD.

Over past seven months, I worked with Steve Mascola which was assigned by Ronda to healthcare.  Steve approach in several projects which I have been working on; reaffirmed why Healthcare business was where I found it when I joined the company.  Which is the second topic for discussion with Don Allen.

With our HR team, I will not get into this topic and leave it for Don Allen discussion on IT/business performance issues.  I have worked in IT industry ( for few decades ) in vary large companies and can pinpoint leadership issues as provided in examples in the complaints.   Over 2 ¼ years, I have done and seen enough projects to speak to it in details.

Even Joe P. agreed on my assessment on the issues I had to overcome (due to lack of leadership five years prior when Steve and Joe were leading healthcare) had galvanized and was much bigger problem.

Thank you,


Amin

BOSTON, SS

Superior Court

From: **Amin Karimpour** <akarimpour@gmail.com>
Date: Sun, Dec 8, 2019 at 7:57 AM
Subject: Re: Your Complaint
To: Jim Tallaksen <jim.tallaksen@gmail.com>

Good Morning Jim,

Just saw this email.   Sorry, As I have been looking for new opportunities my email is packed
with emails...
Please advise on any questions you may have.

The facts are clear per initial complaint and recent action taken.
I did not receive any formal findings after my final communication back with  Meagan, Gesheff.
After Brian Furtak sudden retirement in weeks of my initial complaint, Joe reorganize his
management team.   As Joe and Steve stated to me; the Business Relationship Manager role has
no subject matter expertise and "You are in the essence managing Business Engineering
applications for most of Security (Healthcare, SAT...).   There was no discussion on
Management role given to a person four years out of college vs. me.   Steve pointed that
Business Relationship Managers like himself and Tim have no subject matter expertise and just
facilitator between Corporate IT and Business.

As it became evident both from interactions I had with Steve and final outcome, Joe and Steve
seek my departure and reorganization was an ideal time to take reprisal on my original
complaint.

As on the second topic that I have raised on IT / Business miss alignment, that is critical business
problem (I called it Don Allan topic as it is all about financial model for IT
projects...).   Business Relation Managers like Steve ... have been facilitating major gaps that
causes order of magnitude cost on Business process efficiency by forcing what corporate IT has
to offer as a solution.   In another words, Business must consume what Corporate IT has to offer
vs. what it really needs to be successful and competitive in their industry.   I have worked on
many projects cross multiple organization at SWK to provide examples ....   Due to inefficient
Corporate IT management; such solutions also cost much more than what can be acquired from
other service provider.

While the first issue is directed at me.   The second issue is critical to 20/22 SWK strategy.   A
minor economical down fall has significant impact to the present fragile balances of costs/value
from Corporate IT to each business.   Due to lack of agility in IT services provided by Corporate
IT, the businesses would feel double hit: 1. From lack of IT business value due to the Corporate
IT packaging  2. From fixed cost build into their portion of Corporate IT costs...

Jim: If you need future details on Age discrimination by Joe and future discussion on second
topic, let me know.   I am available Monday / Tuesday after 5 PM.   We can schedule a meeting
on early morning  7:00~7:30 AM on Thursday or Friday per your availability.

BOSTON, SS

Superior Court

Thank you,

Amin

On Thu, Dec 5, 2019 at 10:41 PM Jim Tallaksen <jim.tallaksen@gmail.com> wrote:
Amin:

I have reviewed the material. I would like to review with you to get your side of the facts.

I will be available late morning / 11:30 - 12:30

If you are available at that time, let me know.

Jim


**From:** Karimpour, Amin
**Sent:** Wednesday, February 20, 2019 9:13 PM
**To:** Grotevant, Bill <Bill.Grotevant@sbdinc.com>
**Subject:** Brian Furtak is retiring on March 8th

 Good evening Bill,
Brian let me know today that he is retiring on March 8th.

I guess that explain his complicity on Joe's decision for youthful enthusiasm vs. experience and skills...



He does need to deal with its outcome ...

 I had my final interview with COE team in Hartford for Analytic Management role.

There might be a concern with my location in Waltham and its close proximity to Corporate IT Industry 4.0 team.   My point was Analytics is all about data and that is mostly under Corporate IT management.

 Here is a suggestion on a role that would help engineering security teams and keep me with present organization.   I have built great relationship with SHS, SAT, S&G and their engineering Management over several projects.

Should have no issues to build the same with Matt Kushner (SPS), had good discussions with him twice that had met him.

Baruch was going to report to Matt under SPS.

At SBD, Security division is the only business that Engineering Services reports to IT.

BOSTON, SS                                                                    Superior Court

All other businesses have this role as part Business team.

As person who has built great relationship with various corporate IT resources cross the company, I can facilitate business need more effectively in a Business role.

Based on Joe P. selection on PLM Manager position; It is clear that he has no understanding of the product development processes / challenges.

He was IT manager for Healthcare and what we see and challenged with are outcomes of such decision makings.

Five ERPs , 2 Networks and many applications that has not been converged with standards and common processes.

I can serve the engineering teams in Security most effectively in Engineering Services Management role.

Bringing alignment between Engineering needs through Corporate IT Services and drive consistency in processes, technologies and standards.

Greatly appreciate your advise.


Thank you,


Amin

BOSTON, SS

Superior Court



**Stephen Mascola**
IT Director, STANLEY
Healthcare
October 9, 2019, Stephen
managed Amin directly

Amin is a very knowledgeable and thorough analyst in the engineering, advanced manufacturing, and IoT space. He has a great bedside manner with the business users and is excellent at bridging the gap between complex requirements and technical details in the engineering space.

Amin worked on projects across several different business units in the Security Division. In Stanley Healthcare, he spearheaded a project to bring two separate business units within the Healthcare space onto a common PLM and CAD platform, breaking through a long cultural impasse between the businesses. He showed perseverance and understanding through some tense interactions and was always the calm head in the room. He led development and support for AWS VM farms for our R&D teams, supported our IBM Jazz platform, supported Ranorex automated software testing, and implemented the Fortify Software security platform.

In our Automatic Doors business, Amin worked in conjunction with a corporate center of excellence in Industry 4.0 to tee up a transformational project around barcoding and warehouse management. He led a Windchill upgrade, workflow process improvements, finite element analysis, and implemented agile scrum processes for the product group's firmware and electronic teams.

Amin would be a valuable asset to any organization working in the engineering and advanced manufacturing space. **See less**

BOSTON, SS                                                                   Superior Court

**From: Furtak, Brian**
**Sent: Thursday, July 26, 2018 7:25 AM**
**To: Karimpour, Amin <Amin.Karimpour@sbdinc.com>**
**Subject: FW: June 2018 WIN Awards**

 **Congratulations!**

**From: Wilmot, Kristin 9/4/2018**
**Sent: Wednesday, July 18, 2018 9:40 AM**
**To: Furtak, Brian <Brian.Furtak@sbdinc.com>**
**Subject: June 2018 WIN Awards**

 **Hi!**

 **The following win award has been approved. The recipient(s) will receive payout per the following schedule:**

- **US – July 26th**
- **India – July Payroll**
- **APAC – July Payroll**
- **LAG – July payroll, unless otherwise notified**
- **Europe – August Payroll, unless otherwise notified**

| Win | Award Type | Nominee | Line Manager | Nominator | Award Amount (USD) | |
|-----|-----------|---------|--------------|-----------|---------------------|---|
| Win001642 | You Have Done Something Great | Karimpour, Amin | Furtak, Brian | Furtak, Brian | 500 | Amin has gone ab across various IT support contracts applications valida |

Amin has gone above and beyond his normal responsibilities several times in the recent months. Amin took the lead in the research and resolution of VDI issues impacting the SHS Engineering teams across various Healthcare facilities. He coordinated the effort across various IT domains to identify the root cause and resolve the issue. Amin also identified risk with SHS R&D servers which had failed fans. In researching Amin found that the servers support contract had expired and quickly worked with our ITSC team to get support contracts in place and equipment repaired. Amin assisted our SBD Global Network services team in planning and deploying the new Aryaka solution to several SHS locations including Ottawa and Waltham. Amin worked several evenings to perform applications validation post upgrade. Amin also worked late and helped SBD Storage & Data team move SHS data shares to new cluster so that older storage could be retired reducing risk of failure and unplanned outage.

BOSTON, SS                                                                    Superior Court



StanleyBlack&Decker

GLOBAL IT
United | Innovative | Delivering Results

Certificate of Appreciation

Presented To

Amin Karimpour

Amin went above and beyond normal responsibilities
consistently over the past few months to quickly resolve
various Stanley Healthcare network issues.

Nominee's Manager    Brian J. Furtak        Date    07/26/18

BOSTON, SS

Superior Court

Q4 2018 Org Chart



Q1 2019 Org Chart



BOSTON, SS

Superior Court

Q2 2019 Org Chart



10/17/2019                                          Issue Review

 convercent                                          Logout

English (United States) ▾

Issue Details

**Organization Name**
Stanley Black & Decker

**Issue Summary**
Discrimination continue # A71275C. We are experiencing little
efficiency improvement; Don Allen can reach out to me directly. I will
show him where all the skeleton is hiding that will never get covered
in the power point presentations made to him.

**Department**
Information Technologies (Corporate)

**Initially Reported Involved Parties**
 Steve Mascola, Joe pereira, ... IT Management team

**Issue Types**
Discrimination

**Status**
In Review as of 10/14/2019 7:04 PM GMT

**Incident Location**
1590 - Waltham, MA

**Date of Incident**
10/7/2019

**Time of Incident**
10:00 AM

**Your Disclosure Level**
Remain completely anonymous

**Your Relationship to this Organization**
I am a former employee

**Description of the Incident**
I am reaching out again, this time as a former employee of Stanley
Black and Decker.
Believe strongly in Integrity and future of the company. If there is
need for true understanding on what is going on and why after so
much investment in Corporate IT, .... We are experiencing little
efficiency improvement; Don Allen can reach out to me directly. I will
show him where all the skeleton is hiding that will never get covered
in the power point presentations made to him.
My complaint is that after Brian Furtak (former manager) retired
(due / based on) my original complaint on Age discrimination by Joe
pereira (CIO of Security Division) on promotion, I was targeted for
layoff based on Age and retaliatory action. I talked to Joe after
several meeting and he reaffirm that I am his Security Engineering
applications "Manager / Lead" and only person for such role ... and
Business relationship manager has no technical expertise... This was
the bases of me seeking the desclation of the original complain. We
lost Brian Furtak as result of it.
Per Ronda Gass request, Steve Mascola came in place of Brian Furtak
as my Manager. Last Moday, Steve informed me that my position was
eliminated. Immediately offered his recommendation on linkedin...
Like Joe, Steve had worked with Healthcare division before I joined
the company and was director for the division.
After my successful transformation in building consensus and
roadmap to transformation Engineering / Manufacturing Healthcare
division. Steve also reversed on decisions made with business (He
was directly involved in the agreement) to move forward with project
that would enable Healthcare business transformation??? His
approach has been no better on the SAT Industry 4.0 project. Based
on support and guidance of Industry 4.0 team who were funding the
project, we moved forward with Capgemini consulting for custom
solution. Steve could not secure support model for such custom
application hence pushes a Warehouse management solution as
alternative with much bigger price tag. Our assessment showed that

root cause of short-shipping (major issue to be addressed by the project) was in another area which would not be resolved with neither solution.

As reported before, Age based promotion per complaint case # A71275C, the layoff was planned as position elimination vs. firing (retaliation for my complaint). After all, how can you fire a person who bring value and is respected by business and Corporate IT teams. As the IT goes through reorganization, some positions are eliminated, and new ones get created. As the person targeted based on age/retaliation are eliminated in layoff (position elimination) and others are promoted selectively as was the case in original complaint; there is no question on what has been going on here? This is yet another example of age-based discrimination /retaliation. I have worked very hard (over 60 hours per weeks) with no Bonus, no promotion and no real pay raise. Now before being compensated for 2018 review and just before holidays let go with not even ability to collect my personal items from my desk of two and half years... This speaks to lack of integrity in many levels.

As a mature IT professional, who had fulfilled various Leadership roles in many companies, I can speak to the root causes of gaps between what presented in power points and what is delivered in Balance sheets by IT organization at Stanley Black and Decker. As an example, Project One that went to UAT and pulled back to drawing board (i.e. consumed 70% of budget it had been planned for before going back). Now going through extensive rework and new target dates to release with very costly time and resources. Cost of such a poor management is at several levels: Opportunity lost, recurring expenses on engaged resources for three times of original time window, the value that will not be realizable in years to come... Corporate IT is suffering from paralyzes of self-serving bureaucracy that causes negative effect in running businesses effectively and efficiently. I came across many projects that hit the wall of NO (Offer a very expensive price that business cannot effort) or with phrase "we always do things this way ...". Please feel free to reach out to me with any questions while I explore my options before end of the week.

Thank you,
Amin Karimpour
P.O.Box 462
Belmont, MA 02478
Tel. 617-797-7543

Survey

**Did the incident or violation occur more than once?**
Yes

**How many times did it occur?**
2

**Were you the target of this behavior?**
Yes

**Who targeted you?**
Joe Pereria

**Why do you think you were targeted?**
Age and Wisdom

**Was there anyone injured?**

**Did anyone else witness this incident?**
Yes

**Who are the witnesses?**
HR and Business team

**Was anyone outside the organization involved in the violation?**
No

**Has the incident been reported to anyone in supervision or management?**
No

**Has the incident been reported to anyone outside the Organization?**

10/17/2019

Yes

**Please describe the nature of the injuries.**
The company looses value due to bad decisions made by
inexperience CIO.

Issue Review

No

**Are you a current employee of the organization on which
your report is based?**
No

**Please specify:**
I was let go, Last Monday.

Files

To attach files drag and drop here or select files below

Choose File   No file chosen

uploaded 10/14/2019 6:43 PM by
Reporting Party
Amin Karimpour 2018 Eval
Stanley.pdf

uploaded 10/14/2019 6:43 PM by
Reporting Party
Award_2018_SBD.docx

Messages

Start a new message thread



**Reporting Party**
06:39 pm 10/14/2019

**Communications with reporting party -** This thread was created automatically for you
to communicate with the organization.

0 replies
06:39 pm 10/14/2019

10/21/2019                                                                    Issue Review

 convercent

Logout

English (United States) ▾

Contact Information

**Submitted By**
Amin Karimpour

**Mobile Phone Number**
617-797-7543

**Preferred Contact Method**
Mobile

**Email Address**
Amin.Karimpour@sbdinc.com

Issue Details

**Organization Name**
Stanley Black & Decker

**Status**
Closed as of 4/29/2019 1:11 PM GMT

**Issue Summary**
Promotion denied based on age discrimination. More qualified
candidate with extensive experience was set as direct report to out
of school graduate with few years of work experience. I have been
asked to train my boss. Joe Pereira lack integrity.

**Incident Location**
1041 - Farmington, CT

**General Date/Time of Incident**
October 2018

**Department**
Information Technologies (Business Specific)

**Your Disclosure Level**
Share my name and contact information

**Issue Types**
Discrimination

**Your Relationship to this Organization**
I am currently an employee

**Description of the Incident**
Earlier to the age discrimination act committed by Joe Pereira, CIO
of Security, I had reached to my boss, Brian Furtak, and advise that
as business changing organization and my main customer in
Healthcare is now VP other businesses in Security, we need to realign
to support him.
After a week or so, with hesitation, Brian informed me that Joe is
taking an action and decided to make Tim S. to be Manager for PLM
and I will report to him. I did a linked in research on Tim and found he
had graduated fours before from Northeastern. I have been faculty at
Northeastern since graduate school. Further discussion with Tim
clear the fact that he has no background on PLM and challenges I
have been dealing with for past year and half with SAT, S&G and SHS
organizations.
I have been fixing lots of issues existed from Aeroscout acquisition ...
for SHS, SAT, S&G ... in many areas of Infrastructure, Engineering,
Product Development, Engineering systems, .... I received
accommodations from Brain on going behind duties on the job ...
I shared the following email with Brian on October 10.
Good Morning Brian,
Thank you for sharing the changes we are planning to make in our
organization.
Based on the location and skills/experience set, I can serve our team
better with Global IT and Businesses from Boston Location.
Given I have been here around 1.4 year and had no engagement with
Joe directly may have left a gap (out of sight out of mind).
Frankly, we have lots of changes in all areas and Engineering
Integration will be core part of it.

Issue Review

From Future office to Cyber Security for products, Industry 4.0 ... we will face many challenges to prioritize and align our work.
It is much more than a business relationship management and require deep engagement and consensus building:
• Between acquired businesses
• Between Business IT and Corporate IT (Application, Infrastructure, Third Parties ....)
• Between Business IT and Businesses (building consensus on which ERP, PLM, Industry 4.0 ...)
• Working diligently with Business and IT on technology solutions that fit the over all complex architecture
I looked at Tim's background and he has about 5 years of work experience.
Above list is very complex and require extensive experience and skills both in technical and operational.
I am sure Tim brings youthful energy to the role.
We do need experience and skills to tackle this challenging path forward for Security division.
Thank you,
Amin

I received no written response. After meeting with Joe on October 16, when Tim was introduced as the manager for the team; Brian responded to the email verbally agreeing with fact the Tim has no background for the job ... and concur my assessment on "Youthful Enthusiasm" as reason Joe has selected Tim. This type of decision making based on age are illegal and represent lack of integrity on the leader who make such decisions.
Over past 3 months, I have been training and education Tim. It is painful and frustrating to continue this path given I have opportunities that pays time and half more in consultancy capacity. There is a lot to be done to make 20/22 a reality, I have many choices to make...
Stanley need to have true leaders who appreciate their team based on their experience and value delivered not age. Joe was IT manager for Healthcare before became CIO for Security. SHS IT has been broken for past seven years due to his lack of leadership. To not have taken a swift action in standardizing Business Systems and processes has created environment that each group has its own systems and processes. This is very costly to maintain from IT resources perspective and non-productive from business operation perspective.
It has been an uphill battle to bring Engineering teams together after 5 years and develop standard that is acceptable and move toward integration of the functions and business processes. This is what I have achieved for SHS, SAT, S&G ... and to not even give me a chance on the newly created opportunity given my 20 years PLM leadership for many companies; purely lack integrity. We have achieved great things and have long way to go. The above act has been depressing and leading to consider other options.

Survey

### Did the incident or violation occur more than once?
No

### Were you the target of this behavior?
Yes

### Who targeted you?
Joe

### Who are the witnesses?
Brian Furtak

### Was anyone outside the organization involved in the violation?
No

10/21/2019

Issue Review

**Why do you think you were targeted?**
Age

**Has the incident been reported to anyone in supervision or management?**
Yes

**Was there anyone injured?**
No

**Please explain how and when it was reported and to whom.**
My Boss, Brian Furtak

**Did anyone else witness this incident?**
Yes

**Has the incident been reported to anyone outside the Organization?**
No

**Are you a current employee of the organization on which your report is based?**
Yes

Files

To attach files drag and drop here or select files below

Choose File   No file chosen

Messages



**Your Organization**
01:34 pm 3/20/2019

**Issue in Review -** Thank for reporting this issue. It has been reviewed locally by the management team. The matter is being addressed and closed out with you directly by...

0 replies
01:34 pm 3/20/2019



**Reporting Party**
12:37 pm 2/14/2019

**Communications with reporting party -** This thread was created automatically for you to communicate with the organization.

0 replies
12:37 pm 2/14/2019

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| | | COUNTY |

| Plaintiff: Amin Karimpour | Defendant: Stanley Black and Decker,Rhonda Gass&Joseph Pereira |
|---|---|
| ADDRESS: 66 Marlboro Street  Belmont, MA 02478 | ADDRESS: 1000 Stanley Drive, New Britain, CT 06053 |
| | |
| | |
| Plaintiff Attorney: | Defendant Attorney: |
| ADDRESS: | ADDRESS: |
| | |
| | |
| BBO: | BBO: |

## TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | ☒ YES   ☐ NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?    ☐ YES   ☒ NO

Is there a class action under Mass. R. Civ. P. 23?    ☐ YES   ☒ NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages.
For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS

A. Documented medical expenses to date

    1. Total hospital expenses _____

    2. Total doctor expenses _____

    3. Total chiropractic expenses _____

    4. Total physical therapy expenses _____

    5. Total other expenses (describe below) _____

    Subtotal (1-5): **$0.00**

B. Documented lost wages and compensation to date .......... $350,000.00

C. Documented property damages to date _____

D. Reasonably anticipated future medical and hospital expenses _____

E. Reasonably anticipated lost wages .......... $350,000.00

F. Other documented items of damages (describe below) .......... $1,700,000.00

    TOTAL (A-F): **$2,400,000.00**

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

Three Times Punitive Damages and Whistleblowing Act

#### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

Signature of Attorney/Unrepresented Plaintiff: X _____    Date: _____

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney/Unrepresented Plaintiff: X _____    Date: 8/20/21

SC0001: 1/22/2021          www.mass.gov/courts          Date/Time Printed:08-15-2021 06:51:08

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality ***

| | |
|---|---|
| AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

**CN Contract/Business Cases**

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A05 Consumer Revolving Credit - M.R.C.P. 8.1 | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

\* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c. 231A | (A) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

**PA Civil Actions Involving Incarcerated Party †**

| | |
|---|---|
| PA1 Contract Action involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

**TR Torts**

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death - Non-medical | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

**RP Summary Process (Real Property)**

| | |
|---|---|
| S01 Summary Process - Residential | (X) |
| S02 Summary Process - Commercial/ Non-residential | (F) |

**RP Real Property**

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

**MC Miscellaneous Civil Actions**

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10, § 28 | (X) |

**AB Abuse/Harassment Prevention**

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E | (X) |

**AA Administrative Civil Actions**

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G.L. c. 93, § 9 | (A) |
| E07 Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c.12, § 11H | (A) |
| E24 Appeal from District Court Commitment, G.L. c.123, § 9(b) | (X) |
| E25 Pleural Registry (Asbestos cases) | |
| E94 Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 Appeal Bond Denial | (X) |

**SO Sex Offender Review**

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 SDP Petition, G.L. c. 123A, § 9(b) | (X) |

**RC Restricted Civil Actions**

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c. 6, § 178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112, § 12S | (X) |

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES   ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF -** The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT -** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
## MAY RESULT IN DISMISSAL OF THIS ACTION.

| **Summons** | CIVIL DOCKET NO.<br>*2184CV01908* | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

CASE NAME:

*Amin Karimpour*

Plaintiff(s)

VS.

*Stanley Black and Decker*
*Cios Rhonda Gass & Joseph Pereira*

Defendant(s)

Michael Joseph Donovan     Clerk of Courts

Suffolk     County

COURT NAME & ADDRESS:

SUPERIOR CIVIL COURT

SUFFOLK COUNTY COURTHOUSE

THREE PEMBERTON SQ. 12th Floor

BOSTON, MASSACHUSETTS 02108

---

THIS SUMMONS IS DIRECTED TO *Stanley Black and Decker* (Defendant's name)
*Cios Rhonda Gass & Joseph Pereira*

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the _____ Court.

<strong>YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.</strong>

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

     a) Filing your **signed original** response with the Clerk's Office for Civil Business, _____ Court

                                (address), by mail or in person **AND**

     b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

#### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

#### 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. _Heidi E. Brieger_____ , Chief Justice on _____ , 20____ . (Seal)

Clerk-Magistrate _Michael Joseph Donovan_

Michael Joseph Donovan

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

### PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ . I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: _____          Signature: _____

**N.B.   TO PROCESS SERVER:**

      **PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

Date:

rev. 1/2019

| **Summons** | CIVIL DOCKET NO. *2/84 CV01908* | **Trial Court of Massachusetts** <br> **The Superior Court** |
|---|---|---|

CASE NAME:

*Amir Kalimpour*

vs.                                                    Plaintiff(s)

*Stanley Black & Decker*
*Cios Rhonda Gass & Joseph Pereira*
                                                      Defendant(s)

| | |
|---|---|
| | Michael Joseph Donovan    Clerk of Courts |
| | Suffolk      County |
| | COURT NAME & ADDRESS: |
| | SUPERIOR CIVIL COURT |
| | SUFFOLK COUNTY COURTHOUSE |
| | THREE PEMBERTON SQ. 12th Floor |
| | BOSTON, MASSACHUSETTS 02108 |

*Stanley Black & Decker*

THIS SUMMONS IS DIRECTED TO *Cio Rhonda Gass* _____ (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the _____ Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

     a) Filing your **signed original** response with the Clerk's Office for Civil Business, _____ Court

                                (address), by mail or in person **AND**

     b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

4. **Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required Information on All Filings:**

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. __Heidi E. Brieger_____ , Chief Justice on _____ , 20____ . (Seal)

Clerk-Magistrate _Michael Joseph Donovan_
                  Michael Joseph Donovan

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ . I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: _____            Signature: _____

**N.B.   TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Date: _____

| **Summons** | CIVIL DOCKET NO.<br>*2184CV01908* | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

CASE NAME:

*Amin Karimpour*

                 Plaintiff(s)

        vs.

*Stanley Black & Decker*
*C/os Rhonda Gass& Joseph Pereira*
                Defendant(s)

Michael Joseph Donovan       Clerk of Courts

Suffolk               County

COURT NAME & ADDRESS:

SUPERIOR CIVIL COURT
SUFFOLK COUNTY COURTHOUSE
THREE PEMBERTON SQ. 12th Floor
BOSTON, MASSACHUSETTS 02108

THIS SUMMONS IS DIRECTED TO    *Stanley Black & Decker*
                                    (Defendant's name)
                        *C/o Joseph Pereira*

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the              Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

       a) Filing your **signed original** response with the Clerk's Office for Civil Business,           Court

                           (address), by mail or in person **AND**

       b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

**4. Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

**5. Required Information on All Filings:**

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi E. Brieger _____ , Chief Justice on _____ , 20 ____ . (Seal)

Clerk-Magistrate _Michael Joseph Donovan_

Michael Joseph Donovan

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

## PROOF OF SERVICE OF PROCESS

---

I hereby certify that on _____ . I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: _____         Signature: _____

**N.B.   TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Date: _____