```
                    United States District Court
                      District of Massachusetts
```

| | |
|---|---|
| Amin Karimpour,  )  <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Stanley Black & Decker, Inc. et ) <br> al., ) <br> ) <br> Defendants. ) | Civil Action No. <br> 21—CV-11498-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from the claims of age-based employment discrimination and retaliation brought by pro se plaintiff Amin Karimpour ("Karimpour" or "plaintiff"), a former employee of defendant corporation Stanley Black & Decker, Inc. ("Stanley"), under Mass. Gen. Laws ch. 151B ("Chapter 151B"). Karimpour has also named Joseph Pereira ("Pereira") (collectively, with Stanley, "defendants"), a corporate officer at Stanley, as a party to this case.[1]

In September, 2021, defendants moved to dismiss all of Karimpour's claims except his retaliatory discharge claim against Stanley and Pereira (Dkt. No. 7). The Court allowed

---

[1] Stanley corporate officer Rhonda Gass was a defendant in this case but all claims against her were dismissed (Dkt. No. 30).

- 1 -

that motion, at which point only plaintiff's retaliation claim remained (Dkt. No. 30).

Defendants now move for summary judgment on Karimpour's remaining claim. For the following reasons, that motion will be allowed and the case will be dismissed.

I. **Background**

As set forth in the complaint, Karimpour is a resident of Belmont, Massachusetts who began working at Stanley as a Business System Lead in 2017 when he was 53 years old. Stanley, headquartered in Connecticut, is a tool manufacturer with approximately 61,000 employees. Pereira was the Chief Information Officer of the division within Stanley for which Karimpour worked.

Karimpour alleges that, during the summer of 2018, he proposed the creation of a new position of Business Relationship Manager ("BRM"), to his manager, Brian Furtak ("Furtak"). Furtak subsequently discussed the proposal with Pereira and ultimately informed Karimpour that Stanley had decided to create such a position but had filled it by appointing Tim Schuch ("Schuch"), who is younger than Karimpour.

Karimpour protested and emailed Furtak to explain that Schuch was unqualified for the role and that Karimpour himself would be a better choice. In that communication, Karimpour stated that the only qualification Schuch possessed that he did

not was "youthful energy". According to the complaint, Furtak later responded to Karimpour in person and explained that Pereira wanted to fill the role with someone who possessed "youthful enthusiasm".

Several months later, in February, 2019, Karimpour filed a formal complaint with Conversant, a third-party administrator of internal complaints for Stanley. He asserted that Pereira had discriminated against him on the basis of his age by failing to select him for the BRM position. Karimpour alleges that he subsequently faced pressure to withdraw his complaint. No action arose from the complaint and ultimately it was closed, although Karimpour contends that the investigation into his allegations was insufficient.

Karimpour continued to work at Stanley and, in March, 2019, he received a positive performance review from Furtak. Furtak retired shortly thereafter, at which point Steve Mascola ("Mascola") became Karimpour's supervisor.

The parties agree that in the Fall of 2019, in an effort to cut costs, Stanley determined that it needed to reduce its workforce significantly. The company decided to eliminate 2,700 jobs, including 600 in the United States alone. Defendant Pereira, as Chief Information Officer, asked each of his department leaders, one of whom was Mascola, to eliminate one position.

At that time, Mascola served as Information Technology Director for Stanley Healthcare Solutions and Stanley Access Technologies and was in charge of three direct reports: Karimpour, Adrian Bos ("Bos") and Robert O'Malley ("O'Malley"). According to Mascola's affidavit, which defendants filed in support of their motion, when Mascola learned that he needed to lay off one of his direct reports, the choice was clear. Bos, who was 52 years old, and O'Malley, who was 57 years old, both had significant engineering skills that neither Karimpour nor Mascola possessed. In comparison, Karimpour's main project had been postponed until 2021 (and ultimately did not proceed). To fill Karimpour's time, Mascola had assigned him non-engineering work, such as coordinating an office movie in the Boston area. Mascola himself could perform Karimpour's other work tasks. Mascola submits that in light of those considerations, he laid off Karimpour as part of the reduction-in-force campaign in October, 2019.

After his termination, Karimpour filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") alleging that Stanley laid him off because of his age and because he filed a discrimination complaint after he was not hired for the BRM role. After investigating his complaint, MCAD determined probable cause did not exist to support Karimpour's

claims of age discrimination or retaliation. Relevant here, MCAD concluded that Karimpour's retaliation claim was deficient because 1) Karimpour received a positive performance review only weeks after he filed the complaint and 2) there was little evidence of any retaliatory animus.

The instant litigation followed. After defendants filed a motion to dismiss all of plaintiff's claims except his retaliatory discharge claim (which was allowed), only Karimpour's retaliation claim survived. Now, defendants contend that plaintiff has failed to elicit any admissible evidence that would support an inference that defendants terminated plaintiff's employment because he engaged in protected conduct.

## II. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 322-23.

Although pro se pleadings must be "liberally construed [and are] held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (cleaned up), pro se plaintiffs must still comply with the specificity requirements of Fed. R. Civ. P. 56, see Posadas de Puerto Rico, Inc. v. Radin, 856 F.2d 399, 401 (1st Cir. 1988).

III.  **Application**

At the summary judgment stage, an employee bringing a retaliation claim under Mass. Gen. Laws Chapter 151B must produce evidence from which a jury could find the following elements are met:

> (1) the plaintiff reasonably and in good faith believed that the employer was engaged in wrongful discrimination;
> (2) that he acted reasonably in response to that belief; and
> (3) that there is a causal connection between the protected conduct and [any] adverse employment action.

Pardo v. General Hosp. Corp., 446 Mass. 1, 21 (2006); see also Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., 474 Mass. 382, 405-06 (2016).

Defendants contend that Karimpour cannot produce evidence that supports any of the three elements.  Because the Court agrees with defendants that plaintiff has failed to produce evidence that would support the third element (i.e., the "forbidden motive" element), it declines to consider the first or second.

To determine whether indirect evidence supports an employee's claim that the employer possessed a forbidden motive, Massachusetts courts use a three-stage, burden-shifting framework similar to that adopted by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See

<u>Verdrager</u>, 474 Mass. at 406.  At the first stage, the employee must make out a prima facie case of retaliation by producing evidence that a causal connection existed between the protected conduct in which he or she engaged and the employer's adverse employment action (in this case, Karimpour's termination in October, 2019). <u>Id.</u>  Karimpour has failed to meet his initial burden.

First, "[t]he mere fact that one event followed another is not sufficient to make out a causal link." <u>MacCormack</u> v. <u>Boston Edison Co.</u>, 423 Mass. 652, 662 n.11 (1996) (citation omitted). That is especially true here where there was a substantial gap between the protected conduct and the subsequent adverse action. <u>See Calero-Cerezo</u> v. <u>U.S. Dep't of Just.</u>, 355 F.3d 6, 25 (1st Cir. 2004) (explaining that gaps of three or four months have been held insufficient to establish a causal connection in Title VII context).  Where such a gap exists, "the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." <u>Mole</u> v. <u>Univ. of Mass.</u>, 442 Mass. 582, 595 (2004) (citation omitted).

In his memorandum in opposition, Karimpour submits a collection of disparate allegations without citation to anything in the record.  He alleges, without citation, that Furtak was forced to retire early and that when Mascola replaced Furtak as Karimpour's supervisor in March, 2019, Mascola was tasked with

terminating him in the next planned layoff. He asserts, again without citation, that Mascola purposefully declined to set goals for Karimpour or become acquainted with him because Mascola knew he would soon terminate Karimpour. Finally, Karimpour claims, without citation, that Schuch was permitted to hire a new Engineer Business System Analyst around the time that he was laid off so that the new hire could effectively serve as Karimpour's replacement.

To demonstrate that a genuine dispute of material fact persists after defendants met their initial burden, Karimpour, even as a pro se litigant, cannot rest upon bare allegations alone. See Anderson, 477 U.S. at 256. He is required to

> go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.

Celotex, 477 U.S. at 324 (cleaned up); see also Posadas, 856 F.2d at 401 ("[E]ven a pro se litigant must meet the [] requirement[s] of Federal Rule 56 . . . ."). Karimpour has not met that burden. He cites no admissible evidence that would support his speculative allegations. See Medina-Rivera v. MVM, Inc., 713 F.3d 132, 139-40 (1st Cir. 2013) (holding that where employee relied "on her say-so" and did "not support her rhetoric with hard proof," "her [retaliation] charge amount[ed] to no more than conclusory speculation, which cannot block

summary judgment" or establish a prima facie case). Even if there is some evidence in the record that supports Karimpour's allegations,

> it is not the court's responsibility--let alone within its power--to cull the entire discovery record looking for facts which might convert such a bald assertion [of retaliation] into a triable issue.

Quinones v. Houser Buick, 436 F.3d 284, 290 (1st Cir. 2006) (citation omitted).[2]

The Court need not move on to the second stage of the McDonnell Douglas framework, but if it did, defendants have clearly articulated a legitimate, nondiscriminatory reason for their employment decision. Mascola submits that he had to lay off one of his three direct reports and that the other two employees had significant engineering skills that neither he nor Karimpour possessed. Karimpour acknowledges that his termination was part of a larger reduction-in-force effort that Stanley implemented around the globe.

Finally, at the third stage, Karimpour has submitted no admissible evidence that suggests that the reasons defendants have proffered for his termination were a pretext for retaliation. See Ahern v. Shinseki, 629 F.3d 49, 58 (1st Cir.

---

[2] Indeed, Karimpour has filed a "second response" to the motion for summary judgment that consists of 151 pages of disorganized documents from discovery (Dkt. No. 113) without reference to any specific admissible evidence that would create a genuine issue of material fact.

2010) (engaging in similar analysis of retaliation claim and noting that "[t]his, in itself, might well be enough to warrant summary judgment for the employer on the retaliation claim.").

This Court need go no further. Summary judgment for defendants is warranted on plaintiff's retaliation claim.

Karimpour also seeks to relitigate this Court's earlier dismissal of his discrimination claims. The Court declines to treat Karimpour's memorandum in opposition as a motion for reconsideration and therefore does not consider those arguments in this memorandum. The Court is also cognizant that Karimpour has repeatedly tried and failed to move this Court to reconsider its prior decision.

### ORDER

For the reasons set forth above, defendants' motion for summary judgment (Docket No. 109) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 5, 2024